THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:10cv106

| | |
|---|---|
| CAROL J. STANLEY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment. [Doc. 15].

**I.     PROCEDURAL HISTORY**

Plaintiff filed applications for a period of disability and disability insurance benefits and Supplemental Security Income on September 15, 2004 and March 30, 2006, alleging that she had become disabled as of March 7, 2004. [Transcript ("T.") 52]. The Plaintiff's applications were denied initially and on reconsideration. [T. 39-43, 46-48]. A hearing was held before Administrative Law Judge ("ALJ") Richard H. Harper on November 29, 2007. [T. 349-93]. On February 3, 2009, the ALJ issued a decision denying the

Plaintiff benefits. [T. 19-28]. The Appeals Council accepted additional evidence, but denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 5-8]. The Plaintiff has exhausted her available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to

2

support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets

or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. FACTS AS STATED IN THE RECORD

Plaintiff was 41 years old at the time of her hearing before the ALJ. She is a high school graduate with about one year of college. [T. 351]. Her past relevant work was as a weaver, merchandise displayer, cashier, and shift supervisor. She ceased working on March 7, 2004 due to severe back pain and fibromyalgia. [T. 355].

Plaintiff regularly sought treatment from her primary care physician, Katherine A. Sloss, M.D., between 2004 and 2007 for a variety of complaints. [T. 198-205, 302-04, 309-35]. Plaintiff consistently complained of back pain,

4

but that pain was alleviated when she used Duragesic patches. [T. 200, 326, 323, 324, 315, 333, 332]. On March 22, 2007, Dr. Sloss wrote a disability letter, opining that chronic pain, fatigue secondary to sleep apnea, difficulty controlling diabetes, and depression interfered with Plaintiff's functioning. [T. 302].

On May 14, 2004, Plaintiff underwent a lumbar spine CT scan. It showed a stable moderate central disc protrusion at the L4-5 level which produced no significant acquired central or lateral recess stenosis and no apparent nerve impingement. [T. 154-55].

On June 3, 2004, Plaintiff was seen by rheumatologist Dr. Brent Ferrell of Shelby Medical Associates. He determined that she had "problems with fibromyalgia" but no underlying autoimmune disease, sleep problems, or depression. He recommended physical therapy and a sleep evaluation and prescribed Effexor. [T. 177-78]. On August 26, 2004, a physical examination showed good range of motion, no heat or swelling in the joints, but some tenderness in her neck and shoulders. Effexor was continued, and Neurontin was added. [T. 183-84].

On June 8, 2004, Plaintiff reported for a physical therapy evaluation. She attended just one appointment out of a planned eight to twelve visits,

during which she declined heat/cold therapy, and performed the exercises without visible distress. [T. 158-62].

Plaintiff next visited John Haasis, M.D. at Carolinas Center for Advanced Management of Pain for consultation about her chronic back pain and "generalized pain." He performed a physical examination and reviewed her CT scan. He noted that "provocative testing and her pain referral pattern are consistent with discogenic origin" and recommended weight loss and steroid injections at L4-5. Plaintiff returned, however, for only one round of injections and did not return to see Dr. Haasis again. [T. 191-94].

On February 9, 2005, a lumbar MRI showed a small central L4-5 disc herniation with probable involvement of both L5 nerve roots in the region of the lateral recess; associated desiccation of this intervertebral disc; and minimal bulging of the L5-S1 intervertebral disc without evidence of disc herniation or spinal stenosis. [T. 267].

On February 8, 2005, Jill Nicholson, SDM[1] performed a Physical Residual Functional Capacity Assessment (RFC) for Disability Determination Services (DDS). She found that Plaintiff was limited to medium work, with an unspecified degree of limitations in exposure to heights and hazards. [T. 138-

---

[1]SDM stands for "single decision maker," a person with no medical credentials.

6

45]. This assessment was affirmed by Joel Dascal, M.D. on July 18, 2005. [T. 149].

On April 13, 2005, Plaintiff was evaluated by Stanley F. Dover, M.D. of Pain Management Associates. She complained of progressively worsening low back pain with primary radiation to the right leg, and some to the left leg. She rated the worst intensity as a six on a ten-point scale. Dr. Dover assessed her with lumbar radiculopathy, confirmed by an electromyogram (EMG)[2]; lumbar degenerative disc disease; and meralgia paresthetica, a compressed nerve condition. He determined that her best treatment option was a course of epidural steroid injections. Plaintiff, however, would not agree to undergo the injections. [T. 222-23].

On December 2, 2004, Plaintiff underwent a psychological evaluation by John H. Bevis, M.A., LPA under the supervision of Michael Fiore, Ph.D. for DDS. He found that Plaintiff could understand and follow simple instructions, perform simple repetitive tasks for moderate periods of time, and had significant problems relating to fellow workers and supervisors. He opined that her tolerance for stress and pressure would significantly interfere with her work performance. [T. 195-97].

---

[2]The EMG referenced in Dr. Dover's note cannot be found in the Court's administrative transcript.

On February 7, 2005, a Psychiatric Review Technique (PRT) was performed by Tovah M. Wax, Ph.D. for DDS. [T. 120-33]. Dr. Wax followed this with a Mental Residual Functional Capacity (RFC) assessment in which she opined that Plaintiff had no more than moderate limitations, and could perform simple tasks in an undemanding environment with limited social interaction. [T. 134-36].

Plaintiff received psychotropic medications management for five months from August 2006 through January 2007 at New Vistas. [T. 228-34]. She was diagnosed with major depression, recurrent, but borderline personality disorder was ruled out. [T. 231]. Lamictal, Effexor, and Risperdal were prescribed. [T. 234]. Plaintiff subsequently received counseling from Family Preservation Services through November 2007. [T. 241-67, 275-98].

At the ALJ hearing, Plaintiff testified that on most days, she does not want to get out of bed or talk to anyone, due to feeling hopeless and worthless. [T. 359]. She testified that she rarely gets out of the house, even to visit her sister who lives nearby. [T. 369-70]. She testified that she does no household chores, and that her daughter cleans the house, goes to the grocery store, and cooks meals for her. [T. 360].

Plaintiff testified that she hurts all over from fibromyalgia, mainly in her arms, legs, shoulder and neck. She stated that she cannot exercise to control her diabetes because of pain with walking, lying down, lifting her legs and sitting. [T. 363]. She further testified that she has COPD, which causes shortness of breath that limits her ability to walk. Plaintiff testified that her daughter has to help her put on pants and shoes. [T. 366].

Plaintiff's sister Karen Hardin also testified at the ALJ hearing. Ms. Hardin stated that she mostly talks with Plaintiff on the phone. She stated that Plaintiff often seems to be withdrawn and not listening. [T. 374]. She testified that Plaintiff gets so stressed that she vomits, and that she is "really ill, really short-tempered" and "hateful." [T. 375]. Ms. Hardin testified that they used to grocery shop together but that they had not done so recently because of Plaintiff's back pain. [T. 377-78]. She further testified that Plaintiff cannot sit in a car long without pain and must change positions frequently. [T. 379].

## V. THE ALJ'S DECISION

On March 17, 2008, the ALJ issued a decision denying the Plaintiff's claim. [T. 19-28]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was December 31, 2008 and that she had not

9

engaged in any substantial gainful activity since March 7, 2004. [T. 21]. The ALJ then determined that the Plaintiff had the following severe impairments: major depression and anxiety disorder, fibromyalgia, degenerative disc disease of the lumbar spine, diabetes mellitus, hypertension, arteriosclerotic cardiovascular disease, morbid obesity, and sleep apnea. [Id.]. He found Plaintiff's COPD not to be severe. [Id.]. The ALJ concluded that her impairments did not meet or equal a listing. [T. 22]. He then determined that Plaintiff retained the residual functional capacity (RFC) to perform a limited range of light work, but that she is limited in her ability to perform repetitive bending, stooping and squatting; that she requires non-production work with limited interaction with people; and that she is unable to concentrate for the performance of skilled work due to pain. [T. 24]. He found that Plaintiff was unable to perform her past relevant work; that Plaintiff was a younger individual with a high school education; and that transferability of job skills was not an issue. [T. 27]. Relying upon the testimony of a vocational expert (VE) elicited at the hearing, the ALJ then concluded that significant work existed in the national economy that Plaintiff could perform. [Id.]. Accordingly, he concluded that the Plaintiff was not disabled from March 7, 2004 through the date of his decision. [T. 28].

## VI. DISCUSSION

Plaintiff asserts one assignment of error, namely, that the ALJ erred in his evaluation of the credibility of allegations of disabling pain. For the reasons that follow, the Court finds that the ALJ's assessment followed applicable law and is supported by substantial evidence.

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir.1996) (citing 20 C.F.R. § 416.929(b); § 404.1529(b); 42 U.S.C. § 423(d)(5)(A)). If there is such evidence, then the ALJ must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Id. at 595 (citing 20 C.F.R. § 416.929(c)(1) and § 404.1529(c)(1)).

Plaintiff argues that the ALJ's analysis of her pain was erroneous in three ways. First, she contends that the ALJ improperly dismissed her allegations of symptoms solely because they were not supported by objective medical evidence. Second, she contends that the ALJ failed to consider her

daily activities and the measures she took to obtain relief. Third, she contends that the ALJ failed to consider evidence that her condition worsened between the 2004 CT scan and the 2005 MRI scan of her lumbar spine.

Having found that Plaintiff had severe conditions -- namely, fibromyalgia and degenerative disc disease -- that reasonably could be expected to cause pain, the ALJ engaged in an extensive discussion of Plaintiff's pain, symptoms, and limitations. [T. 24-25]. Plaintiff's contention that the ALJ rejected Plaintiff's subjective complaints *solely* by examining the objective medical evidence is inaccurate. The ALJ did not entirely dismiss Plaintiff's subjective complaints, as evidenced by the fact that he restricted her to a limited range of light work. In assessing Plaintiff's complaints, however, the ALJ properly noted that the record was replete with mild and normal objective findings with respect to all of Plaintiff's conditions. As found by the ALJ, the objective evidence did not support the degree of pain alleged by Plaintiff. This analysis was entirely proper, and the Court finds no error.

Plaintiff next argues that the ALJ failed to consider other relevant factors in assessing her pain. Throughout his decision, however, the ALJ recounted the treatment sought by Plaintiff to address her pain. He further discussed the testimony of both Plaintiff and her sister regarding Plaintiff's daily activities

and her limitations. While the ALJ did not fully adopt all of the limitations claimed, he clearly considered them in restricting her to a limited range of light work. This argument, therefore, is without merit.

As to Plaintiff's final argument, the record does not support her contention that her back condition was worsening. While the 2005 MRI revealed a small central L4-L5 disc herniation with probable involvement of both L5 nerve roots [T. 173], Dr. Sloss noted around that same time that Plaintiff's pain was markedly improved with the use of the pain reliever Duragesic [T. 200]. Indeed, by March 14, 2005, Dr. Sloss noted that Plaintiff was doing well. [T. 201]. Further, while Dr. Dover assessed lumbar radiculopathy, confirmed by EMG, lumbar degenerative disc disease, and meralgia paresthetica in April 2005, he noted upon examination that Plaintiff was in no acute distress; had normal tone and bulk of the muscles of the upper and lower extremities bilaterally; had strength measured at five on a five point scale (5/5) in the upper and lower extremities bilaterally; walked with a nonantalgic gait; had symmetrical and equal reflexes; and had only decreased sensation on the left anterolateral thigh. [T. 223]. While Dr. Dover recommended epidural steroid injections, she declined to pursue this treatment. Plaintiff ceased seeing any specialist for her pain after April 2005,

and the notes from her primary care physician after that date indicate that Plaintiff was generally doing well and that her pain was controlled with medication. [T. 317-18, 321, 326-27, 331-33, 335]. The medical evidence of record simply does not support Plaintiff's contention that her back pain was worsening.

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The record amply supports the ALJ's credibility findings. Given the deference due to the ALJ's credibility determination, the Court finds that the ALJ's analysis of pain and symptoms at step four followed applicable law and is supported by substantial evidence.

## VII. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding of no disability through the date of his decision.

**O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 15] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: December 1, 2011

Martin Reidinger
United States District Judge